Good morning. Illinois Appellate Court, First District Court is now in session. The Third Division, the Honorable Justice Nathaniel House Jr. presiding, case number 1-8-0527, People v. Lewis-Tabor. Good morning, ladies and gentlemen. Good morning. This case is being conducted via Zoom due to the COVID crisis. My name is Nathaniel House. I'm a judge on the Illinois Appellate Court. I'm presiding over this case with me are Justices David Ellis and Margaret McBride. We'd like to tell you the procedure we're going to follow today. Each side is going to be allotted about 10 minutes of uninterrupted presentation. That'll be followed by questions. The appellant will be allowed to make a short rebuttal, and we may have questions of both parties at that time. Does anyone have any questions about how we're going to proceed? With the parties who are going to make a presentation today, please state their names and the party they represent, beginning with the appellant. My name is Sarah Curry from the State Appellate Defender, and I represent Lewis-Tabor. My name is Aileen Diaz, and I represent the people of the state of Illinois. All right. With that, we can begin when you're ready. Thank you. Good morning, Your Honors. As I said, my name is Sarah Curry, and I represent Lewis-Tabor. I'm going to focus my comments this morning on the issues raised in Arguments 1 and 2, but welcome questions on any of the issues raised in the brief. Lewis-Tabor was found guilty of first-degree murder of Maury Strong. The critical difference between first-degree murder and involuntary manslaughter is the mental state that accompanies the conduct that causes death. First-degree murder requires that the defendant intend to kill or do great bodily harm or know that his acts create a strong probability of death or great bodily harm. Involuntary manslaughter, on the other hand, occurs when the defendant unintentionally but recklessly performs acts likely to cause death or great bodily harm. That is, the defendant consciously disregards a substantial risk that a result will follow. Here, the evidence presented at trial established that Tabor acted recklessly, not intentionally or knowingly. Tabor and Strong squared up to fight after Strong inserted himself into an argument between Tabor and Leonard Gardner, who had accused Tabor of being drunk. As they squared up to fight, Tabor grabbed a gun from his brother. Tabor walked up to Strong and hit him in the head three times with the gun, but the third time the gun went off, hitting Strong in the chest, killing him. The state hangs its hat on the testimony of Lavelle Bryant. Bryant testified that he could see that Tabor had his finger on the barrel of the gun the first two times he hit Strong with the gun, but that as Tabor went to hit Strong a third time, he saw Tabor's finger go to the trigger of the gun and pull the trigger. Bryant's testimony is incredible and should not support a conviction for first-degree murder. The shooting took place at 1130 at night, so it was completely dark outside, aside from a few streetlights. There were 50 to 60 people out on the street for memorial service, drinking and doing drugs. It was chaotic, and there was a lot of commotion. Even Bryant testified that everything happened very quickly. At the time of the shooting, Tabor and Strong were only a few inches apart, and Bryant was off to the side on the grass. It defies logic that during this brief chaotic incident in the dark that Bryant would be able to specifically see Tabor's finger move from the barrel of the gun to the trigger and pull the trigger in between the second and third blows. The more reasonable version is that Tabor acted recklessly, not intentionally or knowingly. Tabor's actions in hitting Strong with a gun show a conscious disregard that there was a substantial and unjustifiable risk that the gun would go off. It was reckless for Tabor to handle a gun while he was intoxicated. However, he did not point the gun at Strong. He used the gun to hit Strong. All of the witnesses testified that the gun fired as Tabor was in the process of hitting Strong. Tabor was stunned and shocked when the gun went off. All of the credible evidence presented at trial presents to Tabor acting recklessly. This court should therefore reduce his conviction to involuntary manslaughter and remand for resentencing. Moving on to argument two, the jury in this case was instructed on both first-degree murder and involuntary manslaughter. About two and a half hours into its deliberations, the jury sent out a note asking for the definition of bodily harm. While great bodily harm is an element of both first-degree murder and involuntary manslaughter, bodily harm is not an element of either offense. Over defense objection, the court provided the jury with the definition of bodily harm, responding, the term bodily harm requires some sort of physical pain or damage to the body, like lacerations, bruises, or abrasions, whether temporary or permanent. Only 15 minutes later, after receiving this response, the jury found Tabor guilty of first-degree murder. It's the trial court's duty to guide the jury through deliberations with instructions that convey the legal rules applicable to the evidence presented at trial. Here, the trial court erred in responding to the jury with the definition of bodily harm because the response was misleading and served to reduce the state's burden. The jury's question indicates that it was considering the defense theory that Tabor did not purposely shoot strong. If the jury believed Tabor purposely shot strong, it would not have needed to consider itself, concern itself with bodily harm, great or otherwise. However, the jury asked for the definition of a legal term that was not actually an element of the offenses it was supposed to be considering. Either the jury mistakenly believed bodily harm as opposed to great bodily harm was the element it was supposed to be considering, or the jury thought that it could figure out what great bodily harm meant by using the definition of bodily harm. Either way, the court's response did not clarify any confusion and acted to mislead the jury further. If the jury believed that it only had to find Tabor intended to do bodily harm, or knew that his acts created a strong probability of bodily harm in order to find him guilty of first-degree murder, Tabor's defense would have been short-circuited. The jury would have necessarily found him guilty of first-degree murder because Tabor admitted hitting strong with the gun, and the medical examiner's report indicated that strong suffered lacerations and abrasions, thereby satisfying the definition of bodily harm. If, on the other hand, the jury acknowledged the word great in front of bodily harm, the court's response was misleading. This court has repeatedly held that the term great bodily harm is not susceptible to a precise legal definition. Great bodily harm does, however, require an injury graver and more serious than bodily harm. The threshold for injuries that constitute great bodily harm is significantly higher than that of bodily harm. The term great must be given effect so as not to become superfluous or meaningless. Great bodily harm does not simply mean bodily harm with a great in front of it. If it did, this court would not have such trouble defining the term. Without further explanation as to the meaning of great bodily harm, the jury did not have the appropriate tools to determine whether Tabor intended to inflict great bodily harm or knowingly created a strong probability of great bodily harm. It cannot go unnoticed that the jury returned its verdict 15 minutes after receiving the definition of bodily harm. The jury was seriously considering Tabor's defense. The definition of terms was a sticking point, and the court's response directly led to its verdict. What should the court have done? The court could have told the jury that the element it should be considering was great bodily harm, not bodily harm. The court could have told the jury that while great bodily harm is not susceptible to a precise legal definition, it must be of a more grave and serious nature than that of bodily harm. And then it could have provided the definition of bodily harm. As it was, the jury was left with a definition for an element it was not supposed to be considering and no clarification on what the actual elements of the offense were. Where the jury made its difficulties explicit, the trial court should have resolved them with specificity and accuracy. Instead, the court's response was misleading and had the potential to reduce the state's burden. This court should therefore reverse Tabor's conviction and remand for a new trial. Thank you. Thank you. Justice Ellis, do you have any questions? Just a couple. Good morning, Ms. Curry. Good morning. Thank you for your presentation. So, you say that one permissible response by the court would have been to say, well, just as a reminder, guys, it's great bodily harm. We have a definition of bodily harm, and we don't have a definition of great bodily harm, but great implies it's worse than this. Something like that? Well, not worse than this. I mean, the language that this court has used is grave and more serious, which is a little bit higher of a standard than worse. But to be perfectly honest, this court has been unable to define great bodily harm. The court could easily have also chosen not to respond and said you have the law and the evidence and continue to deliberate because trying to define something that's undefinable could have caused more confusion as well. But defining a term, a legal term that was not something that jury should have been considering was not the appropriate response and only served to mislead the jury further. Well, could we assume, though, that the phrase bodily harm might seem to be somewhat vague to a lay person who's sitting on a jury, but that they understood that the word great was in front of it, even though they didn't ask that part? I mean, people kind of know what the word great means. It would have been preferable, I think, for all of us, we could agree it would have been great if they had said what does great bodily harm mean? Right. Bodily harm is a phrase you don't hear every day. Great is. And couldn't we assume that they just wanted to know what the phrase that great was modifying meant and then that they could apply the word great to it? Well, but by this court's own case law, great bodily harm doesn't mean bodily harm with a great in front of it. It means something more than that. If if that's what it meant, all of these cases that this court has said we can't define great bodily harm would have simply said, let's go with the definition of bodily harm and just put a great in front of it. If you put a great in front of the definition bodily harm, great physical pain could be great bodily harm. Great physical pain could be I stubbed my toe and that caused me great physical pain. But that's not great bodily harm. Great in front of this definition does not rise to the level. But we would have that same argument if he left it undefined. I mean, that's always the problem with great bodily harm. People might think it just means great pain or something. But but but when you put the word great in front of something, that means it's an elevated form of it. Right. If if I asked you, are you in great pain? You would you know, if you tripped and fell and I said, Mr. Are you in great pain? You might say, well, it hurts a little, but I'm not in great pain. I mean, don't don't lay people understand that the word great is an elevated form of whatever clause great is modifying. Then I go back to the cases. Then why hasn't it been defined that way by this court, that it's simply a greater form of bodily harm? It's not because the case law says it's graver and more serious and we have to give the word great. It's do it's a significantly greater. Elevated state, and it's in the within the statute, it's causes death or great bodily harm. Great bodily harm in that context is something that would likely cause death that could possibly cause death. And a great physical pain is not necessarily something that would do that. The jury. Well, I'm sorry to interrupt you, but yes, it's hard to define great physical pain. It's hard to define great bodily harm. The fact that we say it's it's hard to to to pinpoint it is is just a statement of reality. I mean, who can say what great bodily harm means beyond what it obviously is? Well, not that's the point, I guess. It's not that obvious. We have to let a jury in each case decided. But that's not to say that the word great is vague. It's not the problem with great. It's the problem with bodily harm. It's right. I mean, it's not that we say the word great is vague and great really should be grave and more serious. It's that it's the bodily harm that's always it's hard to, you know, you know, if you're bleeding, is that is that great bodily harm? And we've got all these cases. What does it constitute? But that's all just the way the case law works. And we can't do anything about that. But this court has defined bodily harm over and over. And it has chosen not to define great bodily harm because it's the great bodily harm that is. Right. So we've never doubted that it's an elevated form. We're just saying that it's a question of fact. And sometimes it can become a question of law as to whether it is reached the elevated form that was intended. I'm just wondering if the jury has the definition of bodily harm and they can use their own wisdom, their own common sense in determining what the word great means in front of it. That puts them in no different spot than the appellate court does what we try to interpret it. Isn't that the case? But by providing them with the definition of bodily harm, then you're putting the great in front of the definition that you've been given them. So it becomes great physical pain. Great physical pain is not great bodily harm. Which is why this court has never defined great bodily harm as just put a great in front of this definition that we all can agree on for bodily harm. But I thought you said earlier that it would have been OK for the judge to say, well, here's what the definition of bodily harm is. And the case law says that I won't use the word great and I won't use the word worse like I did last time. I was being a little, you know, casual. The case law says it's a grave and more serious version of bodily harm. That would have been OK. That would have been a better option. I would posit that the word grave is suggest something closer to likely to cause death than great. OK. OK. Thank you very much. Thank you. Justice McBride, do you have any questions? I do. As to this great bodily harm aspect, you say that the state's burden was lessened. But I in looking at the cases, I wasn't sure there was something specific to that principle. Do you can you refresh my memory of a case that can reduce the burden of proof? The burden of proof was reduced if the jury was under the mistaken impression that the legal term that it was looking to find was bodily harm as opposed to great bodily harm. If they had kind of not seen the word great or not taken into consideration the word great. If the jury believed that it only had to find an intention or a knowing commission of bodily harm, then the state's burden was reduced. I understand all that. I just didn't see a case that particularly, you know, said something about that. The burden of proof is reduced. However, you also argue that the element I mean, I think you could say also that because an element. Was not explained. In other words, great bodily harm was not explained that that also lessened the burden of proof. Correct. One of the things I did want to ask you was about this fact that the jury came back 15 minutes after the court answered the question. Should we take that into account? The two cases you cite I noticed are those are sequestration cases where the judge tells the jury, you know, guess what, folks, you're going to be locked up overnight. And, you know, if you don't reach a verdict, that's what's going to happen. But I didn't find any other cases that you cited where there was an instructional error that because 15 minutes later, the short time, what would you say to that. Well, the analogy of those cases is that the court courts communication with the jury can have an effect here. The jury, if the jury was confused about whether the element it should be considering was bodily harm, and then they got the definition of bodily harm. And they're looking at what Tabor admitted to, which is striking strong with the gun in the head causing lacerations and abrasions. They have the medical examiner's report right there. They say, oh, he admitted to doing that. So he's guilty. Okay, now going to the first issue involuntary versus murder. Aren't those generally this is a question of his intent or knowledge, correct, or whether he was acting with a total disregard of someone saying. So, isn't that generally a question for the jury to decide. Yes, that is a question for the jury to decide but with any reasonable reasonable doubt argument this court can certainly find that the evidence did not. I think that I think you have a valid point that I mean the judge gave the involuntary. So the jury was given those instructions so isn't, isn't this a case where it was up to the jury to decide. As far as whether it's a murder or reckless involuntary manslaughter. Yes, and that's why these two issues go so well together because the jury was not properly instructed on the elements of the offenses and so did it actually consider properly, whether he was guilty of first degree murder involuntary manslaughter. Your argument though on whether one should be, whether there should have been an involuntary doesn't really go to the great bodily harm, it's all about what was the intent in his acts. Was he acting recklessly or was he acting intentionally I don't, I don't see a correlation between that argument, and the great bodily harm, I do understand your great bodily harm instructional error. The other thing I would point out is that you say it was too dark for this one fellow to see the finger, you know, pull on the trigger. And yet, how do you, how do you mesh that with your argument that we should believe the defendant and, or that the jury should have believed the defendant, and the other witness to see what I'm saying it was too dark for the one fellow to be able to really testify accurately. But you're saying that we should just accept or the jury should have accepted the other testimony because it was darker. It doesn't make sense to me. Well, nobody, nobody else testified to such a specific visual of something that they were seeing everybody agreed that table was hitting strong with the gun. There was no other evidence that he pointed the gun at him that he, you know, he was hitting me with a gun when the gun. Were they really clear about the third strike. But here's the other question I have. If he was hitting him on the head. What is the jury to make out of the fact that he gets shot in the chest. Well, there was some testimony that they were moving back that strong was moving backwards and Tabor was moving forward so it's certainly possible that it is, he's coming down with the third strike, he misses or he hits it off. He's going to hit him in the head but the, the gun hits on his shoulder and shoots him in the chest. I'm not exactly sure because it did happen so quickly it was dark outside, none of the witnesses were able to testify how that specifically happened. You also said that great bodily harm is significantly higher. You know, I agree with your suggestion. But I don't recall a case that says that, you know, that that comes specifically from Brown or read I can't recall which that says that the threshold that constitutes great bodily harm is significantly higher than bodily harm. Okay. That's all I have. Thank you. Thank you. Right. I just have a couple of questions. You indicated earlier that you thought that bodily harm is a really readily definable term. Does the fact that the jury asked for a definition of bodily harm and indication that they were discounting the great part of the instruction. I don't think great, or I don't think bodily harm is readily identified or definable. However, the court, this court has defined it it has been defined. Unlike great bodily harm which nobody has been able to define. Well the jury didn't ask for great value on these that as simply for bodily harm. Correct. And we don't know why that. And that's the big question that we don't know why they weren't asking for the actual legal term of the element they were supposed to be considering and that's why it was so important that the judge makes sure and there's some ask, you know, we're asking to speculate about what the jury was thinking, but you also have to make sure that the jury knows what the elements of the offense are has the proper definitions, if necessary, and is considering the proper And in regard to your first degree murder argument. What's the difference between your argument and a sufficiency of the evidence argument, which goes back to what Justice McBride was asking you, you know, I know you want to switch the standard of review but what's the sufficiency of the evidence argument that the evidence wasn't sufficient for a first degree murder finding the evidence was sufficient for an involuntary manslaughter. But then that put a onerous burden on us in terms of our standard of review, in terms of changing that. Well, it's with any other reasonable doubt argument that if this court finds that the evidence does not support the finding beyond a reasonable doubt it's can certainly reduce the conviction to involuntary manslaughter. Right. That's all I have. Does anyone else have any other questions. No. Okay. Okay. Miss DS you may proceed. Good morning, Your Honor's counsel. As opposing counsel did I would like to address the first and second issues but would be more than happy to answer anything about the third issue as well but we would largely rest on our brief for the sentencing concern. As to the first issue, which is the reduction from first degree to involuntary manslaughter. As your honors know defendant was charged with first degree murder but because of the evidence presented in his case in chief, as well as his attorneys request for an involuntary manslaughter instruction, the jury was given that the jury, then declined to find that defendant killed Marquis strong with a reckless state of mind. What defendant now wants your honors to do despite acknowledging the burden in his brief at the evidence when we're reviewing this question has to be looked at in the light most favorable to the prosecution is to say disregard everything that's in the light most favorable to the prosecution and believe instead defendants testimony, as well as Leonard gardeners or kilos testimony, but in, you know, but my points on this issue are short, the evidence in light in the light most favorable to the prosecution showed us that an angry defendant who thought that it was okay to engage in a fistfight with somebody he knew was kilo. When his brother told him, it's just a fight. You don't need the gun defendant then promptly handed the gun off to his brother, but then when he became angry with the victim, who appears to have been a stranger to defend it, he retrieved the gun from his brother. And for what intent if he knew if it's not to kill or knowingly cause greatly great bodily harm to the victim. So, in light of that, I know defendant testified that he did not intend to shoot the victim and that he did not trigger, but Dury was not expected to believe a self serving testimony, especially when there was no evidence that this gun was susceptible to miraculously discharging without anybody pulling the trigger, though, because the evidence in the light most favorable to the prosecution does show at Bryant saw Bryant was standing right behind Gardner who unlike counsel's argument. Gardner, contrary to counsel's argument, I should say Gardner did give specifics about the event and Gardner also testified that Brian was standing right behind him when he saw defendant put his finger on the trigger. So, in light of that, and in light of the fact that the gun did fire and that defendant died from a bullet wound to the chest, the evidence in the light most favorable to the prosecution does support finding a first degree murder, and we would ask that your honors affirm that. As to the second issue regarding the note, I feel like your honors really highlighted some of the or alluded to some of the points that I wanted to make. During deliberations, Dury sent that note asking for the definition of bodily harm, which as defendant correctly notes on appeal, is not an element of either first degree murder or involuntary manslaughter. To that, I say, so what? Questions that confuse the jury and with which the jury need assistance can't be helped, can't be answered unless those questions aid precisely an element of the offense when it comes to questions of definition. I don't know of any case law that says that, and defendant has not provided any. Defendant incorrectly argues that because bodily harm was not an element of either offense before the jury, the question was improper, which would require a lot of speculation on our part, and that the answer was irrelevant. Just because the question was not what is great bodily harm, which is an element of both of the offenses that were considered, does not make the question incorrect. In fact, we don't know why they asked about bodily harm and not great bodily harm. I suspect that it's because as has been discussed, great is a modifier that can be easily defined by a jury, or if not easily, at least pretty much how we can define it. We have a difficult time with it. So as far as whether the trial court, first thing we have to consider is whether the trial court should have answered the question. I think absolutely the trial court should have answered the question. We have a lot of case law that defines bodily harm because it comes up a lot on appeal because juries frequently ask what is bodily harm, and that's possibly in cases that only involve bodily harm and not great bodily harm. As it may, it is a question that is frequently asked by juries. Honors would permit me seconds to review my notes. As the defendant's point at this trial court's answer lessen the state's burden, as Justice McBride was alluding to, I don't understand how it lessened the state's burden because that would presume once again that the jury, the same jury that is presumed to follow instructions in the law, the same jury that was clearly concerned with reaching a just verdict, otherwise they wouldn't have sent out that note, that same jury, by saying that this lessened the state's burden, that same jury then we have to presuppose could not have correctly applied great as a modifier to bodily harm. This defendant's position just simply requires the court to speculate what the jury meant to ask. It presupposes that the jury couldn't apply the modifier that it repeatedly saw attached to the term bodily harm. And honestly, for the court, as the defendant suggested, initially when I read the brief, I thought, you know what, the court maybe could have, maybe it could have been better for the court to say great bodily harm means this. But in preparing for this argument, to me that would have been improper to the people, an improper interjection, because if I'm a juror, I could take that as, if I ask for bodily harm, the definition for bodily harm, and the court gives me a definition for great bodily harm and says, you know, this is what the definition for great bodily harm is, I would sit there and think, oh, so is the court trying to tell me or suggest that the evidence in this case is not sufficient for what we're trying to do. I think it would have been an improper interjection. Ideally, the jury would have asked what is great bodily harm, but the jury did not ask that. So we are left with the definition that the court gave and case law that says that great bodily harm is grave or more serious than bodily harm. I don't think that more serious and great are that different of modifiers. And I think nothing about this was improper, if we're looking at what would have been a precise definition for great bodily harm, which we couldn't have given, and what more serious means as a modifier. Again, on this issue, we are up here on plain error, because it was not included in a post-trial motion. And the evidence was not closely balanced as defendant's version of events was not plausible. That firearm, there was no evidence that it could have miraculously discharged. And as far as whether or not defendant, the second prong of plain error, whether the trial proceedings can be relied upon, whether they were fair, they were fair. Was the answer prejudicial? It was prejudicial in a sense that defendant did cause great bodily harm, and he killed this individual. So yes, it was prejudicial. Did it render his trial unreliable or unfair? No, it did not. So for these reasons, you would ask your honors to affirm both the judgment and sentence. Thank you. Justice Ellis, do you have any questions? Just a few. Thank you, Ms. Diaz. Good morning. Good morning. I'm looking off because I'm reading the definition that the judge gave. The term bodily harm requires some sort of physical pain or damage to the body like lacerations, bruises or abrasions, whether temporary or permanent. You're no doubt correct that the word great came before that. And great should mean something more than that. But, you know, sometimes it's better if you say nothing at all. The trial judge said nothing. I'm not sure that there'd be a terrific argument that Ms. Curry could make. But if you if you are going to address that. If you were the trial judge, wouldn't you be concerned that the jury was avoiding the ignoring the other word? Wouldn't you want to give some indication to the jury? Okay, I'm going to define bodily harm for you because it's been defined in the law. But I want you to know that the word great is there and you missed it. You know, I'm speaking casually again. I'm not sure exactly what would have been done. I might have might have, you know, if I were if I were the judge, I might say, well, what have the court said about grave bodily great bodily harm grave and more serious. And I would have said, you know, the courts have read great bodily harm, which is what you are in charge, you are charged to decide as this, but a grave or more serious version of it. I mean, leaving the, the, the part out about great. Wouldn't wouldn't there be a isn't there a real concern there that the jury, who's going to take anything the judge says as gospel right i mean juries. Yes, listen to their judges. Sure, sure. Aren't they going to think well that's all we have to find. Or isn't there at least a grave risk of that. To answer your first question, as a judge, I would have been more concerned about interjecting the word great, because to me, that puts the state which is also entitled to a fair trial at a disadvantage because it's almost suggesting you're asking for what you're supposed to be asking, given your discussions back there. I just want to kind of let you know that maybe there's not enough evidence here for any of these crimes. So to me, I would have been concerned about that. As far as having a great concern but judge about oh I apologize about the jury missing the word great not at all. I did not have that when I was reading this because I thought we can't define great, because I think if the courts, the appellate courts were to define great bodily harm, it would cause more confusion, because bodily harm already causes so much confusion. So, I was not troubled by the jury leaving out the word great because I do think it is a very simple modifier that a jury that is expected to understand complex evidence should be able to apply to a definition of bodily harm and more serious grave or more serious harm I think is pretty much the same it's tantamount to great. I guess to put a finer point on it. I think that I think what, what makes this possibly a different case is that the jury sort of carved out two thirds of the element from the other third and said what does this part mean. And I might think in that situation there's all you're right it doesn't have to be an element of the crime that they ask questions about they can ask questions about anything. But when they take a phrase that is going to decide the fate of the defendant, and, and take part of it out of away from the rest of it isn't there some concern shouldn't there be some concern that the jury understand they've got, you know, a larger phrase that they have to construe and that asking me, asking the court, just part of the longer phrase runs the risk that if you answer that you're, you're inviting them to ignore the rest of it wouldn't have wouldn't have been more prudent for a truck to say well, you know, this is the phrase you're charged with deciding great bodily harm. I mean if nothing else saying that you just said that it said it's up to you to decide what great bodily harm means. I think that would have been way to go I'm not here to second guess everything that Judge Coughlin did I mean more than one way to do this and you know we try to be somewhat differential and the choice. The judge makes, but I guess, speak to that if you could be that this course should actually kind of sliced off one third of the. Yeah, and I'm sorry it seems to have frozen I don't know if your question is ended or. Hello. Oh, I can no longer see. I'm sorry I did you hear my question I heard the question I don't know if you're done but I'd be happy to answer what you. Yeah. I'm not as troubled, because bodily harm. I think is, I don't think it is more difficult for a layperson on a jury to understand what is meant by bodily harm in a legal sense. Great is not, I would have been troubled by the judges answer if the word hadn't been great, it had been something else. The answer that you propose, you are tasked with being decided. But great bodily harm means, I think, during the same position wouldn't have verified anything is the jury's question is not what is great bodily harm it's what is bodily harm to begin with. What if, what if the jury asked the judge what is harming. Could you have answered that question without inserting the word bodily in front of it. No, I wouldn't have. I don't think that would have been. But it's okay to leave up, but you get what I'm saying so you don't think it's okay to omit the word bodily, but you think it's okay to omit the word great. I mean that's what you know, I think, because harm, I wouldn't have understood the context it could be could be may not have related to the instructions that's just one word bodily harm. We know where they're getting that term. They're getting it from the charges or the instructions, that's where they're getting. So that is why my concern, I don't, I do not have, I'm not concerned with the judges answer. Okay, thank you very much. I would like to add one point, I do agree, Justice Ellis with what you said at the very beginning I think during Council's argument, which is, I would have loved it if jury had asked what is great bodily harm. But unfortunately that's not what we have. Yeah, sure. Thank you, Justice McBride. I have a couple of questions. So Miss Diaz. We know that under either involuntary manslaughter or murder. Yes, the burden of proof, at least as to the knowing element, or the reckless disregard. There had to be proof of great bodily harm. Correct. Well, or intent to kill. Right. But, but yeah, well I don't think we're here to debate. There was an intent to kill. Okay, because the bodily burden of proof on knowledge or on involuntary manslaughter is great bodily harm. Can we infer from the question itself that the jury was focusing on the matter of bodily harm to the victim. I would say that's one of the things that we're focused on. Just for that question. Yes. I don't know what we're focusing on. Obviously they were looking at what bodily harm means. Yes, absolutely. They sent out a question. But the actual fact is, is that that was not your burden of proof. Your burden of proof was to establish great bodily harm under either one of the charges. Absolutely. So, when a jury indicates that it's focusing on something that's an element of the offense. I don't see how we can ignore that they were asking a question about something less than what was required of the state. I completely agree that they were asking a question that is less than what was required by the state. What I disagree with is that it lessened the burden because that definitely presupposes that the jury was incapable of applying a simple modifier. But they did ask about bodily harm. So here's my question as a follow up. And I know that Miss Curry did indicate this in her brief. But in this particular case, the court did define bodily harm. And that definition included things like lacerations, cuts, bruises. Justice Ellis just read whatever the jury got. Right. Yeah, bruises and abrasions. Yeah, yes. And we know that that is not great bodily harm. The case laws. All right. And I don't think there's any. I don't think there's confusion in the law about what great about what bodily harm is. And the cases have said, you know, great bodily harm isn't susceptible to any simple easy definition and yet we have a definition in the cases that you that was pointed out graver or more serious. So there is a definition. Now, the pathologist in this case, testify that the injuries were the cause of death was gunshot wound to the victim. But there was testimony that was stipulated to involving injuries that often occur when someone is shot and falls to the ground lacerations. In fact, that's exactly what was present in this case, lacerations to his face. So, we've got a jury that now has been told. This is what bodily harm is. And, and the pathologist report clearly indicates only other than the gunshot wound, you know, they've got bodily harm. So, isn't there a suggestion here that this jury, perhaps, was confused about whether the state had to prove great bodily harm. No, not in my mind, not in the people's mind, because great was in the instruction and medical examiner's testimony, didn't just say that there were lacerations, every single injury that she described contain or laceration of not only the skin, but also of subcutaneous issue. That would be great bodily harm. Well, okay. Well, how do you know that would be great bodily harm. I guess I don't your honors would be the ones deciding that but a jury could. It's not unreasonable for a jury. All right, isn't it possible that the jury in this case, now think about, they came back with a verdict. 15 minutes after the judge just explained bodily. Yes. Okay. Is it possible that that when they went through their instructions that they actually never really read them as carefully as we think they do, and that they thought this was a bodily harm thing nothing, you know, skipping the word great bodily harm isn't that possible, because 15 minutes after they get the definition of bodily harm. They come back with a verdict, Your Honor anything's possible I think it's also possible that they already knew what they wanted to decide, they wanted confirmation from the judge about what bodily harm actually meant. We could speculate as to many things back there. Well, if the jury. In this case, thought that all the state had to prove was bodily harm. Is that an error. Is that a plain error. If the state, if the jury thought that was all. Yes, that wouldn't be plain error. Okay, so if the jury was confused about the burden of proof, because they focus their attention on something that wasn't an element, then that you would at least would admit that would be, of course, I mean, I just disagree that the burden of proof of course, but but you would agree that they serve the question they asked was not about the element we had to prove is not an, it was not an element that you had to prove you had to prove great bodily wasn't had to prove more than that, and more than what they asked. Absolutely. Okay. And that's what their focus was in a question of something that was less than what your burden was. But just because that is what their focus is doesn't mean that they didn't understand the modifier and I think that does require a great deal of speculation because great is something that is so. Well, I don't know if there seems to be something inherently confusing here that everyone is saying that this, this definition of great bodily harm is not easily defined it's not susceptible to a simple plain definition. And yet, you're saying that the jury was able to grasp this, even though apparently the courts can't. Well, I think the courts can't because giving a precise definition of these cases that are so fact specific when you're trying to define bodily harm is very difficult, and even the definition for bodily harm. It's not exhaustive it says things like, and then it gives that list it's not an exhaustive list. And so for courts to define something that's just a more serious thing, a more serious burden than whatever is contained in an exhaustive list, I think, becomes almost unworkable. So it's not that it's so impossible to define that that is something that should be left for the trier effect was whatever happened more serious and or graver than bodily harm. Are these inconsistent, when the judge gives them written instructions that says the burden is knowing that your acts create a strong probability of death and great bodily harm, and then later tells them. This is what great, this is what bodily harm is. No, no, obviously in my position or our position. No, but it's certainly not what your burden. Oh, it's not what our burden. The question did not include our full burden. Okay, I nor neither did the definition. Yeah. I don't have anything. Okay, thank you very much. I think the ground has been covered adequately by my colleagues. So, Miss Curry, would you like to make a short rebuttal. I just have a couple quick points. One, Justice Ellis, I appreciate you wanting to be deferential to Judge Coughlin but once he did choose to answer the question, then the review sort of switches to de novo to make sure that the jury was properly instructed on all of the elements of the offense and instructing them on the definition of bodily harm did not properly instruct them on the elements of the offense because it defined an element that was not actually included in the offenses and just responding to the state, suggesting that if just Judge Coughlin had gone one step further and defined great bodily harm the state suggests that would be interjecting great into the mess. Well, great was should have it, it's not interjecting it's pointing it out it's already there. And the state suggests that that would have put it at a disadvantage, which implicitly admits that they're lowering their, they're seeking to lower their burden by pointing out the element of the offense. It doesn't put the state at a disadvantage it holds the state to their burden. And if there are no further questions. Does anyone have any other questions. Now, very well. Thank you very much, ladies. The case was well argued and well briefed, we will take the matter under advisement and issue a decision in due course. Thank you very much and have a great day.